UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAHID AMIR ANDREWS,[1]

               Plaintiff,

        -against-

RIKERS ISLAND, ET AL.,

               Defendants.

25-CV-8770 (LLS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LOUIS L. STANTON, United States District Judge:

Plaintiff, who currently is detained at West Facility on Rikers Island, brings this action, *pro se*, under 42 U.S.C. § 1983, alleging that Defendants violated his federal constitutional rights. By order dated January 29, 2026, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[2] For the reasons set forth below, the Court dismisses the complaint, but grants Plaintiff 30 days' leave to replead his claims in an amended complaint.

## STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune

---

[1] Plaintiff spells his first name as "Shahid." Records maintained by the New York City Department of Correction ("DOC"), however, list his first name as "Shahiel." To ensure that Plaintiff is able to receive orders from this court while in DOC custody, the court will leave Plaintiff's name as Shahiel on the docket.

[2] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff brings this action under 42 U.S.C. § 1983, alleging that Defendants violated his rights when he was detained in multiple DOC facilities on Rikers Island, including the Robert N. Davoren Center ("RNDC"), the Otis Bantum Correctional Center ("OBCC"), the Eric M. Taylor Center ("EMTC"), and the George R. Vierno Center ("GRVC"). Named as Defendants are:

2

(1) Rikers Island; (2) the DOC; (3) RNDC Head Cook Seddo; (4) OBCC Head Kitchen Officer Myatt; (5) OBCC Grievance Coordinator Napoleon; (6) RNDC Grievance Coordinator R. Padmore; (7) RNDC Captain Marshall; (8) RNDC Correction Officer Singh; (9) an RNDC Captain who is assigned badge number 1227;[3] (10) OBCC Captain Gale; (11) OBCC Captain Sanchez; (12) EMTC Captain Matthews; (13) EMTC Correction Officer Scott; (14) Yakubu; (15) OBCC Captain Acevedo; (16) GRVC Dietitian Purohit; (17) RNDC Dietitian Johnson; (18) RNDC Captain Lorquet; and (19) OBCC Correction Officer Abdelhaq.

> Plaintiff alleges,
>
> Department of Corrections person[nel] and supervisors repeatedly engaged in acts and omissions that foreseeably caused physical harm, emotional distress, and the violation of statutory rights. [Plaintiff] was denied of religiously appropriate meals, medical dietary gluten free meal as ordered by doctors, and access to religious texts, obstructed from contacting legal counsel and reviewing discovery, transferred into dangerous housing assignments in retaliation for grievances/311 calls of complaints and litigation activity and, denied reasonable accommodations . . . (minimum standards).

(ECF 1, at 10.)[4] He maintains that these activities "continue[] to occur." (*Id.*)

Plaintiff further alleges that, on June 27, 2025, Correction Officer Scott and an unidentified captain "conducted a search within the dorm" and Captain Matthews "conducted another search that entitled [Plaintiff] to be stripped searched," which Plaintiff alleges violated his "rights as a Muslim." (*Id.*) Plaintiff also alleges that he did not receive an hour of recreation each day while he was in EMTC, RNDC, GRVC, and OBCC.

---

[3] Plaintiff provides this captain's name in the complaint, although it is illegible.

[4] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

Plaintiff describes his injuries as including "chemical exposure causing respiratory distress, skin issues due to restricted laundry and hygiene access, dizziness and balance impairment aggr[a]vated by lack of accommodations, sever[e] emotional distress, exacer[b]ation of post traumatic stress disorder, fear of safety humiliation from retaliatory transfers and discriminatory treatment without limitation." (*Id.* at 12.)

Plaintiff seeks money damages and "injunctive and declaratory relief to prevent further violations and, to ensure provision of reasonable accommodations." (*Id.*)

Plaintiff attached to the complaint various documents including what appears to be a list of grievances that Plaintiff has filed; a "Therapeutic Diet Order" stating that Plaintiff must have lactose-free and gluten-free diet (*id.* at 16); and several incident reports and disciplinary hearing dispositions.

## DISCUSSION

### A.    Claims against Rikers Island

To the extent Plaintiff seeks to assert federal constitutional claims under 42 U.S.C. § 1983 against Rikers Island, those claims must be dismissed because Rikers Island—a land mass in the East River— is not a "person" under Section 1983. The Court therefore dismisses any Section 1983 claims Plaintiff seeks to assert against Rikers Island for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### B.    Claims against the New York City Department of Correction

Plaintiff's claims against the DOC must be dismissed because an agency of the City of New York is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Emerson v.*

4

*City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency.").

The Court declines, at this time, to construe the complaint as asserting claims against the City of New York because Plaintiff has not alleged sufficient facts to state a municipal liability claim against the City. When a plaintiff sues a municipality under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under . . . section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011)). In other words, to state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

Although Plaintiff asserts that DOC employees "repeatedly engaged in acts and omissions that foreseeably caused physical harm, emotional distress, and the violation of statutory rights" (ECF 1, at 10), he does not allege any specific facts in support of his claims. He does not, for example, allege facts describing what any defendants or City of New York employees did that violated his rights, when and where his rights were violated, and who specifically violated his rights. As the Supreme Court has explained, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.

Nor does a complaint suffice if it tenders naked assertion devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations, quotation marks, and alteration omitted). Plaintiff has therefore failed to state a claim under Section 1983 against the City of New York.

If Plaintiff names the City of New York as a defendant in an amended complaint, he must allege sufficient facts to plausibly suggest that the City of New York has a policy, practice, or custom that has caused a violation of his federal constitutional rights.

## C.      Personal involvement

To state a claim under Section 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official[.]" *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

With the exception of Scott and Matthews, Plaintiff does not allege any facts showing how any of the remaining defendants were personally involved in the events underlying his claims. The Court therefore dismisses Plaintiff's claims against these defendants—Seddo, Myatt, Napoleon; Padmore, Marshall, Singh, the Captain assigned Badge #1227, Gale, Sanchez,

6

Yakubu, Acevedo, Purohit, Johnson, Lorquet, and Abdelhaq—for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court grants Plaintiff leave to replead his claims against these defendants in an amended complaint that alleges facts showing how each named defendant was personally involved in the events giving rise to his claims.

**D.     Claims against Scott**

Plaintiff alleges that Defendant Correction Officer Scott "conducted a search" of Plaintiff's dorm. (ECF 1, at 10.) The Court construes this allegation as attempting to assert a claim that Scott violated Plaintiff's right against unreasonable searches in violation of the Fourth Amendment. The Supreme Court, however, has held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 525 (2d Cir. 1984). Because Plaintiff does not have a right against unreasonable researches of his cell or dorm, the Court dismisses his Fourth Amendment claims against Scott for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**E.     Claims against Matthews**

The Court understands Plaintiff to be alleging that Captain Matthews violated his right to bodily privacy under the Fourth Amendment and his right to the free exercise of his religion under the First Amendment.

**1.     Fourth Amendment claim**

While the Supreme Court has held that the Fourth Amendment's prohibition on unreasonable searches does not apply to prison cells, the Second Circuit has nonetheless held that "inmates do retain a limited right to bodily privacy under the Fourth Amendment," *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (reaffirming *Covino v. Patrissi*, 967 F.2d 73, 78 (2d Cir.

1992) ("[M]aintenance of prison security is not burdened unduly by the recognition that inmates do retain a limited right to bodily privacy.")).

"Generally, strip searches have been upheld as a reasonable security measure within a correctional facility even in the absence of probable cause as long as they are related to a legitimate penological goal." *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006 (collecting cases), *aff'd*, 461 F. App'x 18 (2d Cir. 2012); *see Brown v. City of New York*, No. 18-CV-3287 (JPO), 2020 WL 1819880, at *4 (S.D.N.Y. Apr. 9, 2020) ("Under controlling Second Circuit precedent, '[r]outine . . . strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment.'" (quoting *Castro-Sanchez v. N.Y. State Dep't of Corr. Servs.*, No. 10-CV-8314 (DLC), 2011 WL 6057837, at *8 (S.D.N.Y. Dec. 6, 2011)); *Vann v. Griffin*, No. 16-CV-9903 (VB), 2018 WL 6199860, at *4 (S.D.N.Y. Nov. 28, 2018) ("There is a long-established principle that the routine, random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment." (internal quotation marks omitted)).

Conversely, "a strip search is unconstitutional if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean-Laurent*, 438 F. Supp. 2d at 323 (collecting cases); *see, e.g.*, *Covino*, 967 F.2d at 80 (explaining that verbal and physical abuse accompanying a strip search may be intended to harass and intimidate (citing *Hurley v. Ward*, 584 F.2d 609, 611-12 (2d Cir. 1978)).

Here, Plaintiff simply alleges that Captain Matthews strip-searched him. He alleges no facts explaining the context of the search or suggesting that the search was in any way unreasonable. The Court therefore dismisses Plaintiff's Fourth Amendment claims against

Matthews for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2.    First Amendment claim

Plaintiff alleges that Miller's strip-searching him violated his "rights as a Muslim." (ECF 1, at 10.) The Court construes this allegation as an attempt to assert a claim under the Free Exercise Clause of the First Amendment. To assess a free exercise claim, a court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials further legitimate penological objectives." *Kravitz v. Purcell*, 87 F.4th 111, 128 (2d Cir. 2023) (quoting *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) (alterations omitted)). "Reasonable strip searches of prisoners, regardless of their religion, are generally acceptable under the First Amendment because they further the compelling governmental interest of penological safety." *Jean-Laurent*, 438 F. Supp. 2d at 324.

Here, Plaintiff states that he is Muslim but he does not describe any sincerely held belief that was infringed upon. Nor, as discussed above, does he allege that the search lacked a legitimate penological objective or was otherwise unreasonable. Moreover, "courts in this District have consistently rejected claims that standard strip searches violate the First Amendment rights of Muslim inmates whose religion might forbid them from being seen naked by other individuals." *Pizarro v. Bd. of Corr.*, No. 16-CV-2418 (RJS), 2018 WL 3462512, at *5 (S.D.N.Y. July 17, 2018) (collecting cases). The Court therefore dismisses Plaintiff's First Amendment claim against Matthews for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court grants Plaintiff leave to replead his Fourth Amendment and First Amendment claims against Matthews in an amended complaint.

## F.    State law claims

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege

additional facts to state a valid Section 1983 claim, the Court grants Plaintiff 30 days' leave to amend his complaint to cure the deficiencies identified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

### CONCLUSION

The Court dismisses the complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), with 30 days' leave to replead.

The Court declines to exercise supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See* 28 U.S.C. § 1367(c)(3).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:    March 9, 2026
            New York, New York

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.

11